## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| ACQUINITY INTERACTIVE, LLC, a Florida limited liability company, | ) | |
| 7657030 CANADA, INC., a Canadian corporation, also d/b/a ACQUINITY INTERACTIVE, | ) | Case No.  13-cv-5380 |
| GARRY JONAS, individually and as an officer of Acquinity Interactive, LLC and 7657030 Canada, Inc., | ) | |
| REVENUE PATH E-CONSULTING PRIVATE, LIMITED, an Indian company, | ) | |
| REVENUEPATH LIMITED, a Cyprus company, | ) | |
| WORLDWIDE COMMERCE ASSOCIATES, LLC, a Nevada limited liability company, also d/b/a WCA, | ) | |
| SARITA SOMANI, individually and as an officer of Worldwide Commerce Associates, LLC, Revenue Path E-Consulting Private Limited, and Revenuepath Limited, | ) | |
| FIREBRAND GROUP, S.L., LLC, a Nevada limited liability company, | ) | |
| MATTHEW BEUCLER, individually and as an officer of FIREBRAND GROUP, S.L., LLC, | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57(b), and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57(b), 6102(c), and 6105(b).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b), (c) and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A) & (B), 57(b), 6102(c), and 6105(b).

## DEFENDANTS

6.     Defendant Acquinity Interactive, LLC is a Florida limited liability corporation with its principal place of business at 2200 SW 10th St., Deerfield Beach, FL 33442. Acquinity

Interactive, LLC transacts or has transacted business in this district and throughout the United States.

7.     Defendant 7657030 Canada, Inc., which also does business as Acquinity Interactive, is a Canadian corporation with its registered address at 39 Chambertin, Kirkland, Quebec, Canada H9H 5E3. 7657030 Canada, Inc. transacts or has transacted business in this district and throughout the United States.

8.     Defendant Garry Jonas ("Jonas") is the President of Acquinity Interactive, LLC and 7657030 Canada, Inc. At all times material to this Complaint, acting alone or in concert with others, Jonas has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Jonas, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.     Defendant Revenue Path E-Consulting Private Limited is an Indian company with its registered address at Office No. 501, 502, Sacred World, South Wing, Wanawadi, Pune, Maharahtra-411040, India. Revenue Path E-Consulting Private Limited transacts or has transacted business in this district and throughout the United States.

10.    Defendant Revenuepath Limited is a Cyprus company with its registered address at Athinodorous, 3, Dasoupoli, Strovolos, 2025, Nicosia, Cyprus. Revenuepath Limited transacts or has transacted business in this district and throughout the United States.

11.    Defendant Worldwide Commerce Associates, LLC, which also does business as WCA ("WCA"), is a Nevada limited liability company with its principal place of business at 3651 Lindell Road, Las Vegas, Nevada 89103. WCA is a wholly-owned subsidiary of Revenue Path E-Consulting Private Limited. WCA transacts or has transacted business in this district and throughout the United States.

12.    Defendant Sarita Somani ("Somani") is a manager of WCA, the Chief Executive Officer of Revenue Path E-Consulting Private Limited, and a director and shareholder of

Revenuepath Limited. At all times material to this Complaint, acting alone or in concert with others, Somani has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Somani, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

13. Defendant Firebrand Group, S.L., LLC ("Firebrand"), is a Nevada limited liability company with its principal place of business at 7251 West Lake Boulevard, Suite 300, Las Vegas, Nevada 89103. Firebrand transacts or has transacted business in this district and throughout the United States.

14. Defendant Matthew Beucler ("Beucler") is the president of Firebrand. At all times material to this Complaint, acting alone or in concert with others, Beucler has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Beucler, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15. Defendants Acquinity Interactive, LLC and 7657030 Canada, Inc. have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below. These Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations. Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Jonas has formulated, directed, controlled, had authority to control, or participated in the acts and practices of these Defendants that constitute the common enterprise. Acquinity Interactive, LLC, 7657030 Canada, Inc., and Jonas are referred to herein as "the Acquinity Defendants."

16. Defendants Revenue Path E-Consulting Private Limited and Revenuepath Limited have operated as a common enterprise while engaging in the deceptive and unfair acts

4

and practices alleged below. These Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations. Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Somani has formulated, directed, controlled, had authority to control, or participated in the acts and practices of these Defendants that constitute the common enterprise. Revenue Path E-Consulting Private Limited, Revenuepath Limited, and Somani are referred to herein as "the Revenue Path Defendants."

## COMMERCE

17.     At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

18.     Since at least June 2011, and continuing to the present, the Acquinity Defendants and Revenue Path Defendants (collectively "the Acquinity and Revenue Path Defendants") have offered to consumers purportedly free merchandise, such as $1,000 gift cards to large retailers, and products such as an Apple iPad. (Such products and items are referred to herein as "promised free merchandise.") The Acquinity and Revenue Path Defendants have advertised the promised free merchandise on various websites they operate, including freegiftyards.com, gadgetsngifts.com, get-goodies.com, and logic-boxes.com (the "free merchandise websites").

### Text Message Spam

19.     The Acquinity and Revenue Path Defendants attract consumers to the free merchandise websites through various means, including unsolicited commercial electronic text messages ("text message spam"), that are sent directly or through third parties acting on behalf of and for the benefit of the Acquinity and Revenue Path Defendants. The Acquinity and Revenue

Path Defendants, either directly or through an intermediary, pay third parties for driving consumer traffic to the free merchandise websites through text message spam. The Acquinity and Revenue Path Defendants are responsible for the transmission and content of this text message spam.

20. Many such text messages represent, expressly or by implication, that the consumer receiving the message has won a contest, or has been specially selected to receive a gift or prize. For example, the text messages contain statements such as: "You WON! Go to www.prizeconfirm.com to claim your $1000 Walmart Gift Card Now!" or "FREE MSG: you have been chosen to test & keep the new iPad for free only today!! Go to http://testnkeepcell.com and enter 2244 and your zipcode to claim it now!"

21. Many, if not all, of the consumers who received the text message spam sent by or on behalf of the Acquinity or Revenue Path Defendants never agreed to be contacted by those Defendants or by those sending messages on their behalf.

22. Some of the recipients of text message spam have wireless service plans that require them to pay a fixed fee for each text message received by their wireless handsets. Accordingly, such recipients were required to pay a fee for the receipt of the text message spam.

23. Other recipients of text message spam have wireless service plans that allow them a fixed, limited number of text messages per month without charge beyond their monthly service charge, with text messages that exceed the monthly allowance billed on a per-message basis. Accordingly, many such recipients had their monthly allowance of text messages reduced upon receipt of each text message spam sent by or on behalf of the Acquinity or Revenue Path Defendants.

24. The consumer injury caused by the Acquinity and Revenue Path Defendants, or by third parties acting on those Defendants' behalf, cannot be reasonably avoided by consumers. Text message spam is routinely foisted upon consumers without their advance knowledge or permission.

6

25.    Text message spam sent by or on behalf of the Acquinity and Revenue Path Defendants does not create countervailing benefits to consumers or to competition that outweigh the harm caused by their unlawful activity.

26.    The text messages contain links that, when clicked on, take consumers to one of the websites described below.

### Text Message Spam Websites

27.    Some consumers who click on the link in the text message spam are first taken to an Internet web page that recapitulates and expands upon the initial promised free merchandise offer ("text message spam page"). The text message spam page is operated by the third parties that send some of the text message spam, and those third parties are acting on behalf of and for the benefit of the Acquinity and Revenue Path Defendants. The Acquinity and Revenue Path Defendants, either directly or indirectly through an intermediary, pay these third parties for driving consumer traffic to the free merchandise websites through the text message spam pages and are responsible for the content of these text message spam pages. The text message spam page contains statements such as "Receive a FREE $1,000 Walmart Gift Card" in large type. Each text message spam page requires consumers to enter a "code" (sent as part of the text message spam) in a text box and click on a button labeled "Continue" to go to the next page. Consumers who provide their code on the text message spam page are told that they have a "winning code" and are then taken to a page on one of the free merchandise websites (the "landing page").

28.    In some instances, consumers who click on links in the text message spam are taken directly from the text message spam to the landing page without going through an intermediate text message spam page.

### The Free Merchandise Websites

29.    The landing page reinforces the message that the promised free merchandise is in fact "free" through statements such as "GET A FREE $1,000 WALMART GIFT CARD" or "Get

the new iPad Free" and asks consumers to submit their email address or zip code in a text box. Consumers who submit their email address or zip code and click a "Claim Now" or "Continue" button near the text box are taken to a second page called the "registration page."

30.     At the top of the registration page, in bold type, is a message such as "Congratulations!  Tell us where to send your Free $1,000 Walmart Gift Card!" or "Congratulations!  Tell us where to send your Free New iPad!"  The registration page then directs consumers to fill out an online form eliciting personal information, including the consumer's gender, name, mailing address, e-mail address, date of birth, cell phone number, and home phone number.  In many instances, consumers provide the requested personal information based on the representation that they are doing so to enable the promised free merchandise to be shipped to them.  Under the form on the registration page is a button labeled "Continue," which consumers must click to proceed.

31.     Once consumers have submitted their personal information on the registration page and clicked on the "Continue" button, they are led to a page or set of pages on the websites where consumers are required to fill out a survey (the "survey page").  The survey page often states "[name], your $1,000 Walmart Gift Card is waiting!" or "[name], your Free New iPad is waiting!"  To proceed past the survey page, consumers must provide information regarding, among other things, their: (1) job status; (2) income; (3) credit score; (4) credit card debt; (5) medical condition; (6) health insurance; and (7) car and home ownership.  As with the registration page, the survey pages represent that consumers are submitting their personal information in order to receive the promised free merchandise.

32.     After consumers complete the survey page, the free merchandise websites lead them through a series of web pages containing offers for various goods and services from third parties.  A consumer must accept (and often pay for) – in the parlance of the free merchandise websites, "fully complete" or "participate in" – a certain number of offers made by the third parties to qualify for the promised free merchandise.  The free merchandise websites do not

clearly and conspicuously disclose the costs and obligations associated with participating in the third-party promotions.

33.     The consumer usually must complete a total of thirteen (13) offers in order to qualify for the promised free merchandise.  Clicking on each offer reveals what the consumer must do to "complete" or "participate in" the offer.  In most cases, completing an offer entails paying money or incurring some other obligation, such as applying and qualifying for credit cards.

34.     Some of the offers have free trial periods, but require consumers to participate for a minimum period of time to qualify for the promised free merchandise and to pay an initial shipping and handling charge.  Moreover, many of these offers also contain negative option components in which consumers who do not cancel will be billed automatically and indefinitely.

35.     In many instances, consumers stop trying to qualify for the promised free merchandise, whether because of the cost involved, the time and effort required, or because consumers thought that, by inputting their contact information and completing the landing page, registration page, or survey page, they qualified for the promised free merchandise.  Consumers have expended money, provided sensitive personal information, or incurred other obligations in the pursuit of the promised free merchandise.  However, because they have not completed all of the required third-party promotions, they do not receive the promised free merchandise.

36.     In most if not all instances, it is impossible for a consumer to qualify for the promised free merchandise without spending money.

37.     The free merchandise websites, and other websites operated by and for the benefit of the Acquinity and Revenue Path Defendants, including the landing pages, registration pages, and survey pages, do not clearly and conspicuously disclose that, to obtain the promised free merchandise, consumers must pay money or incur other costs or obligations.  Instead, the free merchandise websites attempt to qualify the representations about the promised free merchandise

9

only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

38.     The free merchandise websites, and other websites operated by and for the benefit of the Acquinity and Revenue Path Defendants, including the landing pages, registration pages, and survey pages, represent that Defendants collect consumers' personal information to send them the promised free merchandise.  However, few if any consumers ever receive the promised free merchandise, and the Acquinity and Revenue Path Defendants instead proceed to sell or otherwise share with third parties the personal information they have collected.  These websites refer to sharing consumers' personal information only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

**Initiating Robocalls Without Express Written Consent**

39.     The Acquinity and Revenue Path Defendants supply personal information that consumers provide on the free merchandise websites to WCA, Firebrand, and Beucler.  WCA, Firebrand and Beucler then use this information to send those consumers prerecorded voice messages through telephone calls ("robocalls" or "prerecorded messages").

40.     The free merchandise websites fail to clearly and conspicuously disclose that consumers' personal contact information will be transferred to third parties and then used to deliver prerecorded messages to consumers.  Instead, the free merchandise websites provide any such disclosures only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend the disclosures.

41.     Through a program called Special Offer Service ("SOS"), WCA, Firebrand, and Beucler deliver to consumers robocalls that include offers for various types of goods and services, including travel, home security, satellite television, and entertainment.  Consumers who elect to respond to an offer presented on a SOS robocall are transferred to one of several third-party offer sponsors willing to fulfill a particular offer.

10

42.     WCA, Firebrand, and Beucler sell a telemarketing service that delivers robocalls to consumers.  WCA, Firebrand, and Beucler place outbound SOS robocalls to consumers. WCA, Firebrand, and Beucler also identify sponsors willing to fulfill SOS offers and manage compliance policies and procedures.

43.     WCA, Firebrand, and Beucler are "sellers" and/or "telemarketers" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. 310.2(aa), (cc), and (dd).  WCA, Firebrand, and Beucler have engaged in a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

44.     In numerous instances, WCA, Firebrand, and Beucler have obtained the telephone numbers used for making robocalls from information provided by consumers on the free merchandise websites, and WCA, Firebrand, and Beucler did not obtain such consumers' express written agreement to authorize WCA, Firebrand or Beucler to deliver prerecorded messages to the consumers.  Consumers were not provided a clear and conspicuous disclosure that they were authorizing WCA, Firebrand or Beucler to deliver prerecorded messages to the consumers.  In addition, consumers were required to provide their information on the free merchandise websites as a condition to obtaining the promised free merchandise.

45.     The Acquinity and Revenue Path Defendants have provided substantial assistance or support to WCA, Firebrand, and Beucler, including, but not limited to, by providing a list of consumers to be called, when the Acquinity and Revenue Path Defendants knew or consciously avoided knowing that WCA, Firebrand, and Beucler were engaged in initiating outbound telephone calls delivering prerecorded messages to induce the purchase of goods or services in violation of the TSR.

## VIOLATIONS OF THE FTC ACT

46.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

47.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

48.     Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

49.     In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, the Acquinity and Revenue Path Defendants have represented, directly or indirectly, expressly or by implication, that the promised free merchandise is without cost or obligation.

50.     In numerous instances in which the Acquinity and Revenue Path Defendants have made the representation set forth in Paragraph 49 of this Complaint, they have failed to disclose or disclose adequately to consumers material terms and conditions of the offer, including:

        a.     that consumers must pay money or other consideration to obtain the promised free merchandise; and

        b.     the costs and obligations to obtain the promised free merchandise.

51.     The Acquinity and the Revenue Path Defendants' failure to disclose or disclose adequately the material information described in Paragraph 50 above, in light of the representation described in Paragraph 49 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

12

## COUNT II

52.     In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, the Acquinity and Revenue Path Defendants have represented, directly or indirectly, expressly or by implication, that they collect consumers' personal information to send consumers the promised free merchandise.

53.     In truth and in fact, in numerous instances in which the Acquinity and Revenue Path Defendants have made the representation set forth in Paragraph 52 of this Complaint, they collect consumers' personal information not to send consumers the promised free merchandise, but instead to sell or otherwise share that information with third parties.

54.     Therefore, the Acquinity and Revenue Path Defendants' representation as set forth in Paragraph 52 of this Complaint is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

55.     In numerous instances, the Acquinity and Revenue Path Defendants' practice of transmitting or procuring for their benefit the transmission of unauthorized or unsolicited commercial electronic text messages to the mobile telephones and other wireless devices of consumers in the United States has caused or is likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

56.     Therefore, Defendants' practice as described in Paragraph 55 is unfair and violates Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

57.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The

FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain sections thereafter. 16 C.F.R. Part 310.

58.     WCA, Firebrand, and Beucler are "sellers" and/or "telemarketers" engaged in "telemarketing," and these Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of good or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

59.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

60.     As amended, effective September 1, 2009, the TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient to receive calls that deliver prerecorded messages by or on behalf of a specific seller.  The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.  16 C.F.R. § 310.4(b)(1)(v)(A).

61.     It is a violation of the TSR for any person to provide "substantial assistance or support" to any seller or telemarketer when that persons "knows or consciously avoids knowing" that the seller or telemarketer is engaged in any act or practice that violates Sections 310.3(a), (c), or (d), or Section 310.4 of the Rule.  16 C.F.R. § 310.3(b).

62.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57(a)(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

14

## COUNT IV

63.     In numerous instances on or after September 1, 2009, Defendants WCA, Firebrand, and Beucler have initiated outbound telephone calls delivering prerecorded messages to induce the purchase of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

64.     The acts or practices of WCA, Firebrand, and Beucler, as described in Paragraph 63, above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(v).

## COUNT V

65.     The Acquinity Defendants and the Revenue Path Defendants have provided substantial assistance or support to WCA, Firebrand, and Beucler, including, but not limited to, providing a list of consumers to be called, when the Acquinity Defendants and the Revenue Path Defendants knew or consciously avoided knowing that WCA, Firebrand, and Beucler were engaged in violations of Section 310.4 of the TSR.

66.     The Acquinity and Revenue Path Defendants' substantial assistance, or support, as described in Paragraph 65 above, violates the TSR, 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

67.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

68.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

69.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

1.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

2.      Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

3.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to,

16

rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

4.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.


Dated: July 29, 2013                                    Respectfully submitted,
                                                        JONATHAN E. NUECHTERLEIN
                                                        General Counsel

                                                        /s/ Steven Wernikoff
                                                        STEVEN M. WERNIKOFF
                                                        Federal Trade Commission
                                                        55 West Monroe Street, Suite 1825
                                                        Chicago, Illinois 60603
                                                        (312) 960-5634 [telephone]
                                                        (312) 960-5600 [facsimile]

                                                        Attorneys for Plaintiff

                                                        FEDERAL TRADE COMMISSION