### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13 C 5380** |
| | ) | |
| **ACQUINITY INTERACTIVE, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Federal Trade Commission has sued Acquinity Interactive LLC, 7657030

Canada Inc., Garry Jonas, Revenue Path E-Consulting Private Limited, Worldwide

Commerce Associates, Sarita Somani, Firebrand Group, S.L. LLC, and Matthew

Beucler, alleging violations of sections 5(a) and 5(n) of the Federal Trade Commission

Act (FTC Act), 15 U.S.C. §§ 45(a) and 45(n), and the Telemarketing Sales Rule, 16

C.F.R. §§ 310.3(b) & 310.4(b)(1)(v). Acquinity has moved pursuant to 28 U.S.C.

§ 1404(a) to transfer venue to the Southern District of Florida. The other defendants do

not oppose transfer. For the reasons that follow, the Court grants Acquinity's motion.

### Background

The FTC is a federal government agency responsible for enforcing the FTC Act

and the Telemarketing Sales Rule. In approximately April 2012, the FTC's Midwest

Region office in Chicago opened an investigation of allegedly fraudulent text messages

promoting free merchandise websites. The FTC based its investigation out of its

Chicago office because that office has experience investigating fraud that takes place over the Internet and in foreign countries. Early on during the investigation, the FTC learned that its San Francisco office was investigating related robocalls, and soon afterwards it consolidated both investigations in the Chicago office. The FTC's headquarters are in Washington, D.C., and it has eight regional offices. Its closest office to the Southern District of Florida is in Atlanta, Georgia, about 600 miles away.

Acquinity is a Florida limited liability company with its principal place of business in Deerfield Beach, Florida. 7657030 Canada, Inc. is a Canadian corporation with its registered address in Quebec, Canada. Gary Jonas is president of Acquinity Interactive LLC and 7657030 Canada Inc. The FTC refers to these defendants as the "Acquinity defendants" and alleges that they have operated as a common enterprise that Jonas established and had the authority to control and direct.

Revenue Path E-Consulting Private Limited is an Indian company with its registered address in Maharathra, India. Revenue Path Limited is a Cyprus company with its registered place of business in Nicosia, Cyprus. Sarita Somani is the CEO of Revenue Path E-Consulting Private Limited and a director and shareholder of Revenue Path Limited. The FTC refers to these defendants as the "Revenue Path defendants" and alleges that they have operated as a common enterprise that Somani established and had the authority to control and direct.

Worldwide Commerce Associates, LLC (WCA) is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. It is alleged to be a wholly owned subsidiary of Revenue Path E-Consulting Private Limited. Somani is alleged to be a manager of WCA. Firebrand Group LLC is a Nevada limited liability

2

company with its principal place of business in Las Vegas, Nevada.  Matthew Beucler is Firebrand's president.

The FTC alleges that the defendants have engaged in a practice of sending unsolicited text messages to consumers' cellular telephones stating or suggesting that they have won a gift or prize.  The consumer who bites on the offer is directed to a website that reinforces that she has won free merchandise and asks her to supply certain personal or financial information in order to claim the free merchandise.  The consumer is then allegedly led through a series of web pages that require her to pay money or incur an obligation in order to get the promised free merchandise.  In short, the FTC alleges, the free merchandise is not actually free.  In fact, the FTC alleges, few consumers actually end up getting the promised merchandise, and the Acquinity and Revenue Path defendants then proceed to sell the personal information they have garnered to WCA, Firebrand, and Beucler, who use the information to initiate "robocalls" to consumers to offer them various goods and services.  The defendants are also alleged to have worked with third parties to send text messages to consumers to drive traffic to the defendants' websites. The alleged violations of the FTC Act and Telemarketing Sales Rule occurred throughout the United States, including in this district and the proposed transferee district.

Acquinity has moved to transfer the case to the Southern District of Florida. Acquinity's counsel represents all of the defendants other than Firebrand and Beucler. The defendants other than Acquinity have all stated that they do not oppose transfer.

**Discussion**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]"  28 U.S.C. § 1404(a).  The moving party must demonstrate that the proposed transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986).  "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

A threshold question is whether personal jurisdiction and venue would be proper in the proposed transferee district.  All defendants have conceded this point or have agreed not to challenge venue or personal jurisdiction in that district.

**A.      Convenience of the parties and witnesses**

In evaluating the convenience of the parties and witnesses, a court considers (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the parties' convenience, and (5) the witnesses' convenience in litigating in the respective forums.  *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000); *see also Research Automation*, 626 F.3d at 978.

**1.      Plaintiff's choice of forum and situs of material events**

Courts ordinarily give substantial weight to the plaintiff's choice of a forum,

4

especially when it is the plaintiff's home forum. *See In re Nat'l Presto Indus.*, 347 F.3d

at 664 (plaintiff's choice "should rarely be disturbed"); *cf. Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 255-56 (1981) (common law *forum non conveniens* doctrine). The

plaintiff's choice of forum, however, "'has minimal value where none of the conduct

complained of occurred in the forum selected by the plaintiff . . . .'" *Chicago, Rock

Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (quoting *Josephson

v. McGuire*, 121 F. Supp. 83, 84 (D. Mass. 1954)). And there is persuasive authority

indicating that the plaintiff's choice of forum should be given less weight when that

forum lacks a significant connection to the underlying claims. *See, e.g., Opius Techs.,

Ltd. v. Sears Holding Corp.*, No. 11 C 8539, 2012 WL 2280696, at *6 (N.D. Ill. June 15,

2012).

The FTC's Midwest Region office is located in this district, and in that sense this

district is the plaintiff's home forum. That aside, the only real connection between the

lawsuit and this district is that some of the alleged consumer injury occurred here. That,

however, does not differentiate this district from any other district in the country; the

FTC has not suggested that the alleged scheme had a greater impact here than

elsewhere. The Court concludes that given these factors, the FTC's choice of this

district carries less weight than it would in a case in which a more significant connection

to the forum exists.

**2.      Relative ease of access to proof**

Acquinity states that all of the hardware and software used by its employees,

documents, contracts, and other physical evidence is located in south Florida. The FTC

contends that evidence is spread throughout the United States and the world and that

5

access to proof is the same in any district.  Neither side, however, argues that serious

cost or technical considerations with document reproduction exist in this case.  The

Court views this factor as neutral.  *See, e.g., Caballero v. Taylor*, No. 12 C 8645, 2013

WL 2898254, at *3 (N.D. Ill. June 13, 2013).

### 3.      Convenience of the parties

In evaluating the convenience of the parties, the Court considers the parties'

residences and their ability to bear the costs of litigating in a particular forum.  *See, e.g.,*

*Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 947 (N.D.

Ill. 2002).  Acquinity says that because the FTC is a federal government agency that

has offices throughout the country, the Court should not consider the location of its

counsel as a relevant factor.  *See* Def.'s Mem. at 12.  The FTC argues that it will be

inconvenienced because it conducted this investigation out of its Chicago office, and

thus its staff will incur time and travel costs litigating in that forum.

The only case that Acquinity cites to support its contention that the FTC's

convenience is not a relevant factor is a case decided by the undersigned judge in

2005.  Controlling Seventh Circuit authority that Acquinity does not cite or acknowledge

is, however, to the contrary.  In *In re National Presto Industries*, the Seventh Circuit

considered a defendant's petition for mandamus after the district court denied its motion

to transfer.  The Seventh Circuit squarely rejected the defendant's contention that the

convenience of the government agency (in that case the SEC) was entitled to little or no

weight.  "Federal agencies have limited resources," and they "cannot afford a regional

office in every state."  *Nat'l Presto Indus.*, 347 F.3d at 664.  The court stated that the

principle that "the tie is awarded to the plaintiff" when the inconvenience of alternative

6

venues is comparable "should hold even when one of the parties is a federal agency." *Id.* at 665. "When government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the federal government and who is no less worthy of the protection of the law than corporate officers, shareholders, and employees." *Id.*

Acquinity contends that it will be inconvenienced because requiring employee witnesses who reside in Florida to attend a trial in Illinois could inconvenience them and disrupt Acquinity's business operations. Though this is a point worthy of consideration, the factor of convenience of the parties does not tilt the scale in favor of transfer.

### 4. Convenience of the witnesses

The convenience of witnesses is a significant factor in a section 1404(a) transfer analysis and can be the controlling factor. *See, e.g., First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). When comparing forums, a court considers the number of witnesses in each forum, the importance of the witnesses' testimony, and whether they can be compelled to testify in the particular forum. *Id.* For trial purposes, live testimony is preferred over testimony presented by way of deposition, and thus the existence of significant third party witnesses outside the particular forum's subpoena power can be a significant factor in the section 1404(a) analysis. *See Guignard v. Nat'l R.R. Passenger Corp.*, No. 11 C 124, 2012 WL 1108242, at *3 (N.D. Ill. Apr. 1, 2012); *see also, e.g., Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1277 (N.D. Ill. 1991). In assessing this factor, courts give less weight to the burden that appearing at trial may impose on witnesses who are current employees of parties, because such witnesses typically can be expected to

appear at trial voluntarily. *See, e.g., Guignard*, 2012 WL 1108242, at *3.

In its opening brief, Acquinity argued that nearly all of its current and former employees reside in Florida, and it also referenced "at least 30 [non-party] witnesses with relevant testimony or information" located in that state. *See* Def.'s Mem. at 10-11. But Acquinity did not identify any former employees or the topics on which they would be likely to testify, either in its brief or in the affidavit it submitted from its assistant general counsel Seth Coblentz. *See id.* & Affid. of Seth Coblentz. Coblentz identified some 30 "of Acquinity's publishers" and named their representatives in his affidavit, but neither that affidavit not defendants' opening brief explained how these "publishers" fit in or what material testimony their representatives could provide. Thus although it stands to reason that a good many material witnesses are located in Florida and thus could not be compelled to testify here, Acquinity did not, in its opening brief, comply with the requirement that it "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

In its response to Acquinity's motion, the FTC noted Acquinity's failure to provide any information about the subjects of these witnesses' testimony. The FTC did its own due diligence regarding the 30 "publishers" and provided information showing that 9 of them were located outside Florida and 9 others, though within Florida, might be outside the subpoena power of a federal court in the Southern District of Florida. *See* McKenney Affid. ¶¶ 24-40. The FTC also identified a number of potential witnesses who assisted in promoting the "free merchandise" websites, offered products on those cites, or worked with various defendants and who are located in various states other

8

than Florida, including a small number in Illinois. *See* Pl.'s Mem. at 12 & McKenney

Affid. ¶¶ 10-23. The non-Illinois witnesses, however, could no more be compelled to

appear at trial in this district than they could in the Southern District of Florida, nor is

there any basis to believe they would be more likely to appear here voluntarily.

Acquinity did a better job of identifying and describing potential witnesses in its

reply. Assistant general counsel Coblentz named four former Acquinity employees who

are likely to have significant information regarding contested matters and who all

continue to reside in South Florida even though they no longer work for Acquinity. *See*

2d Coblentz Affid. ¶ 10. Coblentz also noted that Acquinity lost over 150 employees in

2012-13, over 80 percent of whom resided in South Florida. More generally, it stands to

reason that because Acquinity conducted the challenged operations in South Florida,

numerous witnesses with relevant knowledge are likely to be located there.

By contrast, the FTC has not identified any potential witnesses in this district

aside from the very few referenced above. Thus, if the case remained in this district, a

trial very well could consist largely of the presentation of deposition testimony. Some

deposition testimony likely would be required even if the case were transferred to the

Southern District of Florida, but the odds are significantly better that a significant

number of important witnesses would appear live if the case were heard there, because

they would be subject to that court's subpoena power. The Court concludes that the

convenience of witnesses is a significant factor favoring transfer.

**B.      Interests of justice**

In evaluating the interests of justice, a court considers each respective district's

familiarity with the applicable law, the speed at which the case likely will proceed to

disposition in each district, the desirability of resolving controversies in their locale, and the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978.

### 1. Familiarity with applicable law

The claims in the case turn on federal law. For this reason, neither this district nor the proposed transferee district has any greater degree of familiarity with the applicable law. This factor is neutral.

### 2. Time to trial or disposition

To compare the relative speed that the case would proceed in the two districts, courts consider the median time from filing a case to disposition as well as the median time from filing to trial in each district. *Id.* at 14. For the most recent period, the median time to disposition in the Southern District of Florida is 5.0 months, and the median time to trial is 16.1 months. *See*

http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagemen tStatistics/2013/district-fcms-profiles-june-2013.pdf&page=92 (last viewed Dec. 31, 2013). In this district, the figures are, respectively, 6.7 months and 31.5 months. *See*

http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagemen tStatistics/2013/district-fcms-profiles-june-2013.pdf&page=47 (last viewed Dec. 31, 2013). The time-to-disposition figures are not materially different. The time-to-trial figures are materially different, but they are not terribly meaningful. They "consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue." *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009). More to the point, the Court can say with certainty that it would

take nowhere near 31 months to bring this case to trial; 18 months is more likely.[1]  For

this reason, the Court does not consider this a significant factor in the section 1404(a)

analysis.

### 3.    Resolution of controversies in their locale

A court has an interest in resolving issues affecting residents of its district and

state, including Illinois consumers allegedly harmed by a nationwide scheme.  A court in

another state may, however, have a stronger interest in resolving the underlying dispute

that affects its companies and citizens who are named as defendants.  The Southern

District of Florida is home to Acquinity and is an alleged nexus of the defendants'

behavior and business dealings, and thus a court in that district has a significant interest

in resolving this dispute, because a good deal of the underlying conduct that the FTC

challenges took place there.  By contrast, no defendant or affiliate is claimed to have

operated from Illinois.  Consumer injury is alleged to have taken place here, but it

likewise occurred in the Southern District of Florida and elsewhere; there is nothing to

suggest that this district was the home of a disproportionate number of injured

consumers.  For these reasons, the Court concludes that this particular "interests of

justice" factor favors transfer.

### Conclusion

The FTC chose this district, the home forum of its investigating office, and for that

reason its choice is entitled to significant consideration.  That said, the balance of the

---

[1] On January 2, 2014, the Court began a jury trial in a roughly comparable case, *SEC v. Yang*, No. 12 C 2473, a complex securities fraud suit brought by the Securities and Exchange Commission.  The time from filing to trial was just under 21 months, but a number of depositions had to be taken in Hong Kong, which caused significant pretrial delays of a sort that would not occur in the present case.

other factors considered under section 1404(a) tilts significantly in favor of transfer. The

Court concludes that transfer would not merely shift inconvenience from one side to the

other and that the balance of convenience strongly favors transfer. For these reasons,

the Court grants defendant's motion to transfer [dkt. no. 16] and directs the Clerk to

transfer this case to the Southern District of Florida.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　MATTHEW F. KENNELLY
　　　　　　　　　　　　　　　　　　　United States District Judge

Date:  January 6, 2014